THE HAUSER, BRENNER & FATH CO. v. THE H. E. POGUE
DISTILLERY CO.

1. Under the statute authorizing service upon the "managing agent"
   of a foreign corporation in this state, a service upon the presi-
   dent residing in this state is good.
2. Such president who maintains an office in this state and trans-
   acts correspondence and other corporate business is estopped
   by such acts to deny his power to represent and bind the cor-
   poration. Such acts fix his official status and representative
   character in this state.

HOSEA, J.

Motion to quash service of summons.

Petition filed Nov. 13, 1901, for money only, on a debt
created in May and August, 1900.

Personal service on John F. Pogue, managing agent of
defendant, on fourth alias summons, Dec. 24, 1902, and
then motion filed Jan. 15, 1903.

With and in support of motion to quash, is filed an affi-
davit of John F. Pogue, alleging that he is president of the
defendant company, a Kentucky corporation, carrying on a
distillery at Maysville; that said company does not maintain
an office at Cincinnati; that he was served at his residence
at Cincinnati; and that he is not a designated agent of the
corporation in Ohio.

On March 16, 1903, Stephen Hauser, Jr., president of
plaintiff, files affidavit alleging positively the following
facts:

(1) That he made the contract sued upon with John
F. Pogue, then first vice-president and managing agent of
defendant, in 1899, at defendant's office in the United Bank
Building, Cincinnati.

(2) That the defendant then maintained and does still
maintain an office in said building for the transaction of
business, and that affiant and others have there transacted
business on behalf of defendant with and through said
Pogue.

(3)  That said office has become and is well known to the trade and the business world as the office of defendant through their advertisements; and submits in proof a bill of defendant against plaintiff, dated Nov. 5, 1900, signed by John F. Pogue, upon a regular engraved letter head of defendant corporation, showing its full corporate name, containing a cut of defendant's distillery and other matter, with the usual heading of "Cincinnati, O.," as the place of writing, and above it and beneath the cut, the legend: "Cincinnati Office, United Bank Building, Long Distance Telephone 734," and at the left, the names of the corporate officers, including John F. Pogue, first vice-president.

Arthur D. Hauser, officer and employe of plaintiff, with equal positiveness avers that the office of defendant was in the United Bank Building in 1898, 1899, 1900 and 1901, and was so designated on the letter heads of defendant and in the Cincinnati Directory; and that he made collections and had business dealings there in relation to defendant with said John F. Pogue as vice-president and managing agent.

The defendant, on March 27, 1903, counters with affidavits of John F. Pogue, president; Henry E. Pogue, general manager, and William L. Pogue, vice-president.

John F. Pogue, president, denies that he is the "managing agent" (quoting the words); avers that he is an attorney at law, and has an office in the United Bank Building. He admits the card in the City Directory, referring to the H. E. Pogue Distillery Co., but claims it was to avoid confusion of correspondence and mail deliveries as between himself and the H. & S. Pogue Co. (presumably the dealers in dry goods); but alleges discontinuance of said card prior to filing this suit. He admits the letter heads, but says they are for his personal convenience in "conducting his personal correspondence in connection with the business of the defendant company"; admits transaction of business with plaintiff at his office in United Bank Building, but claims that Hauser knew that "all such business was necessarily submitted to the company at Maysville," and no contracts "closed or consummated" at Cincinnati; that all

dealings between the parties, "aside from the first or primary negotiations," were conducted at Maysville; and the matters in controversy were submitted to affiant at his office in Cincinnati for convenience of plaintiff. He denies that any sign of the defendant has been or is upon his office door.

The allegations of A. D. Hauser as to collections are denied "so far as affiant remembers"; and he avers individual unfamiliarity with the construction of cooperage and plaintiff's knowledge of this fact; and admits visits of Wm. Pogue to Cincinnati before and after the contracts sued upon to consult plaintiff with reference thereto.

The remaining affidavits vary but little in substance or phraseology from that of John F. Pogue, and add nothing essentially new to the status of fact.

A careful consideration of these affidavits leads to the conclusion that the defendants fail to meet and answer the allegations of fact applicable to the prior dates involved, and also fail to recognize the distinction between the practical operation of the distillery and details of business connected therewith, and the management of the corporate affairs, *per se*.

John F. Pogue, while he may be unfamiliar with practical details of manufacturing, etc., is nevertheless the president and chief executive officer of the corporation, which as a creature of law requires legal, rather than manufacturing skill for the management of this branch of its service—and possibly this was the reason for his selection.

To say that the president of a corporation is not a "managing agent," is but a mere quibble of words. A corporation can only act through its agents. All its legal officers are its agents, and the president is chief; and is, by virtue of his office, the responsible head of the corporate business.

A so-called "general manager" is usually an employe, although the duties may be performed by an officer; but the law recognizes no such office in a corporation.

It may well be that practical questions, such as relate to

cooperage and the like, should be referred to the general manager at Maysville, and that the president or managing vice-president might be governed in his corporate action by the skill and advice of a general manager, but the making of contracts is an act of corporate power which is controlled by the principle: *Delegatus non potest delegare*.

There is no doubt in my mind that the corporation, by permitting John F. Pogue, a resident of Cincinnati—its first vice-president and later and now, its president—to transact its corporate business here (for conducting correspondence, negotiations, and making of contracts, etc., is corporate business), and especially by the direct averments of its letter heads and advertisements, held itself out to the world at the date of this suit and at date of the service of summons, as maintaining an office and an agent here; and as this agent is its official head, it is estopped by these acts to deny either the fact of his agency or his plenary power to represent and bind the corporation.

If it has failed, being a foreign corporation, to take the steps required by law to entitle it to do business in this state, that is a wrong which it can not plead as an excuse or take advantage of to the detriment of its creditors.

With respect to suits against corporations, Section 5044, R. S., provides that service may be had upon the president or other chief officer, or, if he be not found in the county, then upon its cashier, treasurer, secretary, clerk, or managing agent; and Section 5046 provides "that service on a foreign corporation having a managing agent in this state, may be had upon such managing agent."

It must be admitted, as decided by the Supreme Court of the United States in 106 U. S., 360, *St. Clair* v. *Cox,* that the mere accidental and temporary presence of a corporate officer or of a managing agent in the state, as, for example, in passing through the state as a traveler, or on a temporary visit not connected with the company affairs, would not make service upon him valid to bind the corporation. As Justice Field properly says:

"To involve the representation of the company * * * he

would be required to be here as agent or officer of the corporation, and not as an isolated individual."

This and other similar authorities do not apply here, for the obvious reason that John F. Pogue admits his permanent residence, his official status, and the transaction of corporate business at this place, and of giving actual notice to the business world of these facts. "This," to further quote Justice Field's words, "declares and fixes his official status and representative character in this state."

The case in 21 C. C., 230 (*Bucket Pump Co.* v. *Eagle Co.*), differs from the case at bar in this essential particular, namely, that there the service was upon an employe soliciting orders, having no authority to conclude contracts or bind the company.

Another section of the code indicates a like distinction in the law of procedure between an officer of a corporation and its agent—one being an agent in a special sense and occupying the status of a party, the other being a mere representative or agent in the general sense. I refer to Section 5102, relating to verification of pleadings, wherein precisely the same distinction is made between the officer of a corporation and its agent, as between a party and his agent. This distinction rests upon the same fundamental reason in both cases, namely, that the officer of the company is the direct and special agent selected and authorized by the stockholders; whereas, the ordinary agent is but an employe who can only bind the company by virtue of special statutes.

Upon the facts here, I am satisfied that the service of summons personally upon John F. Pogue, admittedly the president and chief officer of the defendant company, and who resides and transacts business for the company in Cincinnati, is a good service and binds the company.

Motion to quash denied.

*G. W. Hardacre,* for plaintiff.
*Pogue & Pogue,* for defendant.